NOTICE

*Memorandum decisions of this court do not create legal precedent.  A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| EVANGELINE G., | ) |
| | ) Supreme Court No. S-18539 |
| Appellant, | ) |
| | ) Superior Court Nos. 3PA-18- |
| v. | ) 00003/00004/00005 CN |
| | ) |
| STATE OF ALASKA, DEPARTMENT | ) MEMORANDUM OPINION |
| OF FAMILY & COMMUNITY | ) AND JUDGMENT* |
| SERVICES, OFFICE OF | ) |
| CHILDREN'S SERVICES, | ) No. 1976 – July 26, 2023 |
| | ) |
| Appellee. | ) |
| | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Jonathan A. Woodman, Judge.

Appearances:  Courtney Lewis, Anchorage, for Appellant. Laura Wolff, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee.

Before:  Maassen, Chief Justice, Carney, Borghesan, Henderson, and Pate, Justices.

## I.    INTRODUCTION

The superior court terminated a mother's parental rights to her three young children, finding that she had not remedied the conditions that put her children at a

---

*        Entered under Alaska Appellate Rule 214.

substantial risk of harm. Throughout the proceedings, both parents and the Office of Children's Services (OCS) agreed that the Indian Child Welfare Act (ICWA) did not apply. The mother appeals, arguing that the superior court should have inquired into whether ICWA applied after she submitted an affidavit a year before trial that included a reference to her "ancestors['] indig[e]nous roots." Finding no error, we affirm the termination order.

## II.    FACTS AND PROCEEDINGS

Evangeline G.[1] is the mother of three young children. OCS sought temporary custody of the children in 2018 because of concerns about domestic violence, mental injury, and neglect. About a year and a half later OCS petitioned to terminate Evangeline's parental rights.

If a court has reason to know that a child involved in a child in need of aid proceeding is an Indian child, regulations adopted by the Bureau of Indian Affairs (BIA) to implement ICWA require the court to confirm that OCS "used due diligence to identify and work with all of the Tribes of which there is reason to know the child may be a member."[2] The parties to this case repeatedly asserted, and Evangeline never disputed, that the children were not eligible for membership in an Indian tribe and that ICWA therefore did not apply.[3] Accordingly, the court issued orders each year, from 2018 through 2022, finding the law inapplicable.

In December 2020 Evangeline submitted a 17-page affidavit addressing her experiences as a Black woman and asking the court to consider her case in the

---

[1]    A pseudonym is used to protect the family's privacy.

[2]    25 C.F.R. § 23.107(b)(1) (2023).

[3]    For example, at a trial-setting hearing in October 2019, Evangeline expressed frustration about the contrast between her case and ICWA cases, telling the court, "You guys [have] a whole section on how to handle Native American families and how you respect their culture . . . . I have had absolutely no respect, for there is no respect in this system for being a[n] African[-]American individual."

context of this personal and historical trauma. She wrote that she had been "alienated, homeless, labeled[,] deemed a poor [B]lack stere[o]type." She wrote about the oppression of Black Americans, writing that "disenfranchisement looms heavy over [her] similar to the scars beat about [her] ancestors['] backs symbolizing their attempt[]s to escape their capt[ors;] all they wanted was to be free." She wrote that she had been taught falsehoods in school, such as that "Christopher [Columbus] [was] a hero who[] sailed in and discovered the new world already occupied by [her] ancestors['] indig[e]nous roots." Evangeline testified about this affidavit at the termination trial. She explained, "[Being disenfranchised] means to me that back to the ghetto you go. Back to the streets, . . . that's what they . . . anticipate. It means that . . . that poor and [B]lack stereotype that they wrote out that I said that I'll never be, that that's what they're forcing upon me[,] which creates a substantial burden for me."

Following trial the superior court terminated Evangeline's parental rights, finding that she "ha[d] not made any advancements toward[] reunification" and that termination was in the best interests of the children. Evangeline moved for both a new trial and reconsideration; she did not at that time assert that her children were or might be Indian children. She now appeals the termination of her parental rights, raising for the first time the claim that the superior court should have inquired about her children's possible status as Indian children.

## III. STANDARD OF REVIEW

"We review de novo the superior court's conclusions of law, including the interpretation of ICWA and BIA regulations."[4]

## IV. DISCUSSION

The BIA explains that a court "has reason to know that a child . . . is an Indian child if: (1) [a]ny participant in the proceeding . . . informs the court that the

---

[4] *State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs. v. Cissy A.*, 513 P.3d 999, 1008 (Alaska 2022) (footnotes omitted).

child *is an Indian child*; [or] (2) [a]ny participant in the proceeding . . . informs the court that it has discovered information indicating that the child *is an Indian child*[.]"[5]  We have held that "a vague assertion of Native heritage is not a reason to know a child is an Indian child"; the " 'reason to know' must be specific enough to point to the fact that the parent or child is likely enrolled in a particular tribe."[6]  "[S]tatus as an Indian child is a political designation," not a racial one.[7]

Evangeline argues that the court erred by not inquiring into whether her children were eligible for membership in a tribe because of her use of the phrase "my ancestors['] indig[e]nous roots" in the December 2020 affidavit.[8]  But we must conclude that this phrase — ambiguous in itself and even more so in the context of Evangeline's overall argument about disparate treatment with no other allusion to Native heritage — was not sufficient to alert the superior court to a likelihood that she was enrolled in a tribe or that her children were Indian children.  The superior court's failure to inquire into the children's possible tribal membership following Evangeline's mention of her "indig[e]nous roots" was not error.

## V.   CONCLUSION

We AFFIRM the termination of Evangeline's parental rights.

---

[5]    Indian Child Welfare Act Proceedings, 25 C.F.R. § 23.107(c)(1)-(2) (emphasis added).

[6]    *Jimmy E. v. Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 529 P.3d 504, 514-15 (Alaska 2023).

[7]    *Id.* at 515.

[8]    OCS argues that because Evangeline does not seem to have been prejudiced by the court's alleged error in not inquiring into tribal heritage, any error would be harmless.  Because we find no error, we do not need to address this argument.